Richard TEPLY, Plaintiff–Appellant,

and

Reeled Tubing, Inc. and National Union Fire Insurance Company of Pittsburg, Intervenors–Third Party Plaintiff–Appellant,

v.

MOBIL OIL CORPORATION and the Unnamed Barge, Defendants–Appellees,

and

Ronco Barge and Crew Boat Rentals, Inc., Third Party Defendant–Appellee.

No. 88–4314

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1988.

Susan C. Severance, Lafayette, La., for Richard Teply.

Laura Kay Austin, Susan A. Daigle, Lafayette, La., for Reeled Tubing Inc. and Nat. Union, Etc.

St. Paul Bougeois, Lafayette, La., for Reeled Tubing, Inc.

William B. Gaudet, Adams & Reese, New Orleans, La., for Mobil Oil Corp.

Ronald A. Johnson, James E. Swinnen, New Orleans, La., for Ronco Barge & Crew Boat Rentals, Inc.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court rendered summary judgment rejecting a harborworker's claim under 33 U.S.C. § 905(b) and general maritime law against a vessel aboard which he was injured. It did so because: (1) the harborworker's accident resulted from an obvious danger, and (2) that danger was created by circumstances about which the vessel neither knew nor should have known. The injured harborworker had ample opportunity to produce evidence sufficient to create a genuine issue of material fact concerning the "negligence of [the] vessel" required for recovery under § 905(b), but he failed either to do so or to invoke Federal Rule of Civil Procedure 56(f) to extend the time available for discovery prior to responding to the defendant's motion for summary judgment. Therefore, we affirm.

## I.

Because this is an appeal from summary judgment, we accept the version of the facts set forth in opposition to the motion for summary judgment insofar as it is supported by at least some evidence and is not purely speculative or argumentative.

Richard Teply was employed by Reeled Tubing, Inc. He was assigned, together with Tony Cipriano as operator and two other Reeled Tubing employees, to work on a Mobil Oil Exploration and Producing Southeast, Inc. (MOEPSI) oil well that was on land but accessible only by barge. MOEPSI furnished the barge transportation for Reeled Tubing's equipment and employees.

On February 4, 1986, Teply and his three co-workers drove a Reeled Tubing truck to the MOEPSI dock, arriving in the early morning during a pouring rain. MOEPSI employees required Cipriano to load the Reeled Tubing truck far to one side of the barge in order to leave room for other equipment. The barge was then moved to the well with the Reeled Tubing employees and equipment aboard. The MOEPSI employees traveled on another vessel.

Reeled Tubing's machinery was operated from a console that was reached by a ladder. The ladder was in two parts, a top section permanently affixed to the console, and a portable section that was designed to reach from the last step of the top section to the ground or deck. Because of the Reeled Tubing unit's location on the barge, however, the ladder when attached hung over the edge of the barge. There is no evidence that MOEPSI employees knew of this problem.

After the barge had arrived at the well site, a MOEPSI employee instructed the Reeled Tubing crew to rig up as much as possible while they were waiting for other work to be done on the well. In order to rig up, Teply climbed the ladder into the console to check the pressure gauges. He then began to climb down, but, while one of his feet was on the first step of the fixed ladder and he was bringing the other foot

down, he slipped and fell onto a pipe that was welded vertically to the edge of the barge. He suffered serious injuries.

At his deposition, Teply testified that the Reeled Tubing unit was hydraulic, oil had leaked on the fixed ladder and its rails, and the steps were slippery. The ladder "was wet," he stated, "[t]here was oil all over the side of the unit and everything. It was slippery." The oil made it difficult to climb the ladder and Teply knew he had to be careful. However, Teply adduced no evidence that any MOEPSI employee knew of the danger, and MOEPSI adduced evidence that its employees were not aware of it. Natural Union Fire Insurance Company and Reeled Tubing have intervened in this action to assert a subrogation claim for Teply's compensation benefits.

## II.

Teply asserts that MOEPSI was responsible for his injury in at least one of three ways: (1) it was responsible for Teply's slip from the ladder; (2) it was responsible for the problem with the bottom part of the ladder, which, Teply asserts, caused Reeled Tubing employees not to attach it and thus precluded him from grabbing it to break his fall, and (3) it was responsible for the dangerous position of the vertical pipe onto which Teply fell. Teply contends that summary judgment was improper because there was evidence from which the trier of fact might infer the company's negligence.

Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), does not impose liability without fault on vessel owners. The statute is limited by its terms to negligence and expressly negates liability for unseaworthiness, which is a form of liability without fault. The Supreme Court interpreted § 905(b) as it applies to stevedores, but in principle as it applies to other harborworkers who work on board vessels as well, in *Scindia Steam Navigation Company v. De Los Santos*.[1] The Court held that the vessel owner has two duties under the Act: (1) to exercise reasonable care "to

1. 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its ... operations with reasonable safety,"[2] and (2) "to warn the stevedore of hidden danger which would have been known to [the vessel owner] in the exercise of reasonable care."[3] The vessel owner has no duty "to inspect or supervise the stevedoring operation," although "the vessel may be liable if it actively involves itself in the cargo operations and negligently [causes harm]."[4]

■■■ Undisputed facts preclude Teply's recovery under § 905(b). First, Teply testified that he slipped because of oil and water on the fixed ladder's steps, a danger caused wholly by Reeled Tubing's rather than MOEPSI's equipment. Furthermore, Teply was aware of the danger; indeed, given the uncontested fact that MOEPSI's employees were not present on the barge and did not supervise Teply's work closely, MOEPSI could have known of the danger only if it was so obvious that Teply could not have failed to recognize it. Ship owners are not liable for obvious dangers that injure contractors aboard their vessels unless the contractors, in order to avoid the danger, would be forced either to leave the job or to face penalties for causing delay.[5] Although *Stass v. American Commercial Lines, Inc.*[6] contains a broad dictum to the effect that "the shipowner has no defense that the hazard was ... 'open and obvious,'"[7] the opinion in that case recognizes that this applies only when, "'the longshoreman's only alternatives would be to leave his job or face trouble for delaying the work.'"[8] There is no evidence that Teply was under any time or supervisory pressure, and a good deal of evidence to

the contrary. MOEPSI therefore cannot be held liable for his fall.

Second, Teply claims that the absence of the bottom portion of the ladder precluded him from breaking his fall. However, the absence of the ladder plainly was not a hidden danger for which MOEPSI could be held liable under § 905(b). Rather, the danger was simultaneously so obvious to Teply and his co-workers as to preclude recovery, and unknown to MOEPSI's employees, who, the uncontradicted evidence demonstrates, were unaware both of the absence of the ladder and of its significance.

Third, Teply claims that the vertical pipe on the barge exacerbated his injuries, and that MOEPSI was responsible for the barge's dangerous condition. However, the pipe became dangerous only because of its proximity to the Reeled Tubing equipment, and again, any danger must have been obvious to Teply. Furthermore, there is no evidence that MOEPSI's employees either knew or should have known of the danger, a danger that could have been predicted only on the basis of considerable knowledge about Reeled Tubing's method of operation. Consequently, Teply has failed to raise a genuine issue of material fact that could demonstrate MOEPSI's negligence.

Teply cites a number of cases in which the vessel owner was held liable for injuries to longshoremen and harborworkers or in which summary judgment was denied.[9] However, there was evidence in each of those cases that the vessel owner knew or should have known of the condition aboard the vessel that caused the worker's injury.

---

**2.** *Id.*, 451 U.S. at 167, 101 S.Ct. at 1622.

**3.** *Id.*

**4.** *Id.*, 451 U.S. at 167–68, 101 S.Ct. at 1622.

**5.** *See Morris v. Compagnie Maritime des Chargeurs Reunis,* S.A., 832 F.2d 67, 70 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

**6.** 720 F.2d 879 (5th Cir.1983).

**7.** *Id.* at 882.

**8.** *Id.* (quoting *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, 509(2d Cir.1976).

**9.** *See, e.g., Hodges v Evisea Maritime Co.,* 801 F.2d 678 (4th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 1572, 94 L.Ed.2d 764 (1987); *Gill v. Hango Ship–Owners/AB,* 682 F.2d 1070 (4th Cir.1982); *Dunn v. Penrod Drilling Co.,* 660 F.Supp. 757 (S.D.Tex.1987); *Thomas v. Plovidba,* 653 F.Supp. 1300 (E.D.Wis.1987).

Here, as has been explained, there was no such evidence.

Although Teply complains that he has not yet taken the deposition of one of the MOEPSI employees, he made no effort to take the deposition for more than a year. He filed suit on February 4, 1987, and in September the district court ordered discovery to be completed by March 21, 1988. The motion for summary judgment was filed on January 20, 1988, and although the intervenors were denied additional time to respond under Fed.R.Civ.P. 56(f), Teply failed even to request further time to depose the MOEPSI employee. Under these circumstances, Teply's failure to depose the MOEPSI employee does not preclude entry of summary judgment against him.

In *Celotex Corp. v. Catrett*,[10] the Supreme Court made clear that the party moving for summary judgment need not disprove its opponent's claim, but need show only that the party who bears the burden of proof has adduced no evidence to support an element essential to its case. Teply had the burden of proving that MOEPSI was negligent, and it therefore was incumbent on him to bring forth some evidence to this effect.[11] Teply not only failed to do so; his own deposition testimony made it clear that, under controlling principles of law, MOEPSI could not be held liable for his injuries.

The district court properly put a quick end to this litigation, saving all of the parties the labor and expense of a trial that would have been fruitless. Accordingly, its judgment is AFFIRMED.

---

10. 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

11. *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).